**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

**MEMO ENDORSED**

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
299 BROADWAY
SUITE 1700
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
175 MAIN STREET
SUITE 800
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (914) 761-0995

February 21, 2021

Honorable Kenneth M. Karas
United States District Judge
United States District Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

By: ECF and Email/PDF

      Re:    *United States v. Kesean Galloway*, 17 Cr. 202 KMK)
             Letter Motion for Compassionate Release/Reduction
             In Sentence Pursuant to 18 USC 3582(c)(1)(A)

Dear Judge Karas:

      This application is made, pursuant to 18 U.S.C. §3582(c)(1)(A), to reduce the 120-month prison sentence it imposed on Mr. Galloway on September 5, 2018 (ECF Doc No. 190) and immediately release him to home confinement for the remaining duration of his prison term (to be followed by the imposed three-year period of supervised release). I move for this relief due to the defendant's well-documented and serious underlying conditions of ▬▬▬▬▬ ▬▬▬▬▬ which, individually and especially collectively, place the defendant at significantly greater risk of life-threatening illness or death should he contract the COVID-19 Virus.

**Procedural History**

      On November 29, 2017, pursuant to a Plea Agreement, the defendant pleaded guilty before the Honorable Lisa Margaret Smith to a two-count Information charging robbery conspiracy and carjacking (ECF Doc Nos. 63-65). On September 5, 2018, this Court sentenced Mr. Galloway to an aggregate prison sentence of 120 months' to be followed by three years' Supervised Release. (ECF Doc No. 190). He is designated to serve his prison sentence at FCI Ray Brook, (Hereinafter "the facility") where he is currently incarcerated. He has been in custody since his arrest on April 5, 2017, a period of approximately 3 years and 10 months.

      As of February 21, 2021, there are approximately 28 million current cases of Covid-19 throughout the United States, 494,008 total deaths, over 2,500 people dying daily and over

1

67,000 new daily cases.[1] Given Mr. Galloway's co-morbidity high-risk factors, the defendant applied to the Federal Bureau of Prisons ("BOP"), specifically the Warden, FCI Ray Brook, for relief pursuant to 18 USC 3582(c)(1)(A). On February 3, 2021, that request was denied. (Exhibit A, attached hereto). After complying with his administrative exhaustion requirements, the defendant now seeks the intervention of this Court. As further explained herein, given the ongoing conditions at FCI Ray Brook, the defendant's extremely serious co-morbidities, and 3553(a) factors, Mr. Galloway's sentence should be reduced and he should be released to home confinement with strict electronic monitoring.

## The Defendant's Underlying Health Conditions Constitute "Extraordinary and Compelling Circumstances"

As detailed in the defendant's BOP medical records (Exhibit B, hereinafter, "Medical Records"), the defendant has at least three underlying medical conditions which individually and collectively place him at much greater risk of serious illness or death than those without these conditions.[2] According to the defendant's BOP medical records, Mr. Galloway, ███████████████████████████████████████████████ He also has been diagnosed with and prescribed medication ███████████ which is noted throughout his medical records. ███████████████████████████████████████ which has not been followed up or treated by BOP, demonstrating its indifference to his risks of complications from ████ itself as well as his risk of potential severe health consequences should he contract Covid-19 as a result of that underlying condition. The CDC recognizes that the defendant is at increased risk of serious illness or death should he contract Covid-19 due to the three underlying conditions documented in his BOP medical records: ████████████████████████ The CDC updated these underlying condition risk factors on February 3, 2021.

According to the CDC, "[p]eople of any age with [certain] underlying medical conditions, are at increased risk for severe illness from COVID-19.[7] The foregoing therefore constitutes "extraordinary and compelling" reasons, pursuant to 18 USC §3582(c)(1)(A)(i), to reduce the defendant's 120-month term of incarceration and impose home confinement with strict electronic monitoring because, should the defendant become infected with Covid-19, given

---

[1] https://covid.cdc.gov/covid-data-tracker/#datatracker-home (Last visited February 21, 2021)

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[█] ███████████████████████████████████████████████

[█] ███████████████████████████████████████

[█] ███████████████████████████████████████████████ BOP records do not indicate that there has ever been a follow up test or examination to further investigate this serious comorbidity.

[6] Since BOP has not followed up on Mr. Galloway's ███████████████████████ for almost one year, with no treatment, it is assumed for the purposes of this application that ███████████

[7] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

2

his aforementioned co-morbidities, the risk that the Covid-19 infection progresses to severe illness or death is much higher for the defendant than for someone without these underlying conditions.

Courts have routinely found defendants with similar conditions meet this "extraordinary and compelling reason" threshold. See, e.g., *United States v. Gonzalez*, No. 3:19-CR-00090 (VAB), 2020 WL 7024905, at *4 (D. Conn. Nov. 30, 2020) ("obesity, taken alone, may constitute an extraordinary and compelling reason for release"); *United States v. Rodriguez*, No. 00 CR. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("obesity and Type II diabetes constitute an extraordinary and compelling reason to modify his sentence"); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (hypertension and diabetes constituted extraordinary and compelling reasons justifying release). I submit that the Court should similarly find in the instant case that the defendant has demonstrated extraordinary and compelling reasons in support of the relief requested.

### Facility Conditions and BOP Lack of Care Put the Defendant at Great Risk

FCI Ray Brook is located in Ray Brook, New York and is described on the BOP website as "a medium security federal correctional institution with a detention center", with an inmate population of 687.[8] Just last month the facility saw the steepest rise in Covid-19 infection with 132 inmates and 17 staff members testing positive.[9] According to the latest statistics, of 567 inmates tested, 132 1nmates have tested positive[10] an astounding inmate infection rate of over 23%. Kesean unit contains cells which house up to 6 inmates together. My client informs me that his unit has over 100 inmates who sleep in bunk beds in close proximity with multiple other inmates who all sleep in a small area of space. During phone calls with family, inmates are placed four at a time into a booth with no social distancing. Mask wearing is not enforced and hand soap is not provided to the inmates. It is well-known that Covid-19 has such a high infectivity rate and close quarters promote transmission, so that prison creates a "tinderbox for infection".[11] The CDC recommends that correctional institutions "reassign bunks to provide more space between individuals, ideally six feet or more in all directions."[12] It is clear that based upon the description of the defendant's living conditions within his dormitory and with the internal layout of facility itself, social distancing of any space is not enforced at FCI Ray Brook, much less six feet in all directions as recommended by the CDC.

---

[8] https://www.bop.gov/locations/institutions/rbk/

[9] https://www.adirondackdailyenterprise.com/news/local-news/2021/01/fci-ray-brook-sees-highest-covid-19-numbers-ever/

[10] https://www.bop.gov/coronavirus/ (Visited February 21, 2021)

[11] *See* Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples Federal Prison in Louisiana*, Wash. Post (Mar. 29, 2020), available at: https://www.washingtonpost.com/national/anexplosion-of-coronavirus-cases-cripples-a-federal-prison-inlouisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

[12] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (December 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

3

In denying in boilerplate fashion, the defendant's application for compassionate release ("*you state* your ███████████ and past history of smoking cigarettes, make you particularly vulnerable to the disease… Although we understand *you feel* you are at an elevated risk of significant illness or death caused by COVID-19 based on the aforementioned factors…") (Exhibit A [emphasis added]), BOP demonstrates its deliberate and total indifference to the application. First, Kesean is not the authority who merely 'states" that his underlying conditions make him extremely vulnerable to serious health consequences or death should he contract Covid-19. He doesn't just "feel" that way. It is the CDC that "states" his underlying conditions of ███████████ are empirically proven to put him at increased risk.[13] The denial form reads as if Kesean's underlying conditions are an allegation, ignoring their own medical records documenting these conditions, while failing to even mention the defendant's ███████████ as a significant co-morbidity, much less the defendant's specific ███████████ is separately defined by the CDC as creating an "increased risk" by itself.[14] Second, its ignoring and failing to follow up at all for almost one year, on the defendant's ███████████ from March 16, 2020 ███████████ BOP further demonstrates its indifference to the Kesean's significant risk, as diabetes is another significant underlying comorbidity. This demonstrates, together with the aforementioned living conditions at FCI Ray Brook, that the Warden's claim of "extreme measures [being taken by the facility]to mitigate the exposure and spread of the COVID-19 virus" (Exhibit A) as simply not true.

## Legal Standard

The Court may modify an imposed term of imprisonment for "extraordinary and compelling reasons." 18 USC §3582 provides:

The court may not modify a term of imprisonment once it has been imposed except that –

(1)    in any case –

(A)    the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

---

[13] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

[14] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity

imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

> (i) extraordinary and compelling reasons warrant such a reduction . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission...

U.S.S.G. § 1B1.13 Application Note 1(D) grants the sole authority to the Bureau of Prisons to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling". However, in *United States v. Brooker*, 19-3218-cr (2d Cir., September 25, 2020) the Court held that the "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline§ 1B1.13, limits the district court's discretion." Id. at 18.

### 18 USC §3553(a) Factors Support Release to Home Confinement

I anticipate that the Government will point to the nature and characteristics of the defendant's offense as violent and disqualifying under 18 USC 3553(a) factors. The mitigating factors argued at Kesean's Sentencing Hearing on September 5, 2018 resulted in the below-guidelines range sentence of 120 months' imprisonment that the Court imposed. Of course, all relevant factors, including the violent nature of the defendant's crimes were all weighed in the Court's determination of a sentence sufficient but not greater than necessary. For the following reasons and taking into account a "new balancing" of all relevant 18 USC §3553(a) factors due to extraordinary and compelling circumstances, I submit that these factors do support the relief requested.

Mr. Galloway has been incarcerated since his arrest in this case on April 5, 2017. He has thus served approximately 46 ½ months of his 120 months' prison sentence, over 45% of his sentence, factoring good time. He has a projected release date of April 9, 2027.[15] ███████████████████████████████████████████████████████████████ His Career Offender Guidelines Range was driven exclusively by crimes he had committed as a 16-year-old, for which he received Youthful Offender designation by New York State, which is unrecognized by the Guidelines. Kesean is now 24 years old and has matured with age in prison as reflected in total lack of BOP disciplinary history. He has also followed the Your Honor's sound advice at the Sentencing Hearing:

> "And, Mr. Galloway, you should take advantage of whatever programs are offered to you, especially during your supervised release, which we will talk about when we get to the conditions of supervised release, because no doubt we all have

---

[15] https://www.bop.gov/inmateloc/

5

challenges, and we have to take advantage of whatever methods can be adopted to meet those challenges; but you also have very powerful reasons in the back of the courtroom to change your behavior, and that's just good old-fashioned common sense and willpower; and as you age, you will understand the magnitude of those responsibilities and hopefully embrace them because sometimes when we are younger we shirk responsibilities because that's kind of what our brains are programmed to do; but hopefully in the process of getting wisdom you will understand that you should really do the opposite, and not only will you be able to have, as you discussed, a positive influence on future generations, you can also just feel good about what you are doing and not have to worry about constantly apologizing as you did here earlier today." (Sentencing Transcript, attached hereto as Exhibit C, at 23-24).

Kesean has indeed taken advantage of the programs offered at BOP in order to better himself. He has informed me that he has successfully completed the following programs: The First Step Money Smart Course; National Parenting Program; Drug Education; Suicide Companion; and Anger Management. He is currently enrolled in GED classes and waiting to take the GED test, although test scheduling has been suspended due to Covid-19. He is also studying to be a drug counselor.

Furthermore, it is very important to highlight that Kesean has no disciplinary history whatsoever at FCI Ray Brook. Thus, the defendant has demonstrated a willingness over a period of many years to comport himself responsibly and to follow the rules of the facility. This is reflective of his personal growth and maturity as a man of 24 years of age. His behavior has earned him the trust by the BOP to work in the kitchen. Kesean is simply not the same person who committed his crimes when he was 16 or when he was arrested for the instant case at 20 years old and incarcerated ever since. His successful participation in BOP educational programs is a testament to his maturity as a human being and demonstrates that, notwithstanding the violent offenses he has committed in his life, he now poses little or no danger to the community should the Court grant this application and release him to home confinement, especially with strict electronic monitoring.

The "need for the sentence imposed", of 120 months' imprisonment, in order "to promote respect for the law", and achieve specific and general deterrence, was totally appropriate at the time of sentence, during ordinary times. But this application is submitted in extraordinary times. Due to the defendant's underlying serious comorbidities and the aforementioned deliberate indifference and lack of care demonstrated by BOP, his continued incarceration, no matter the amount of jail time already served or still to serve, constitutes a significant danger to Kesean's life. Reducing the defendant's sentence and imposing home confinement would therefore also reflect the seriousness of the defendant's offense and promote respect for the law. given the almost 4 years Kesean has already served in prison. With electronic monitoring, significant restriction of his liberty would still continue. After completing home confinement, three years' Supervised Release will still await him.

6

As the Court is aware, all of the applicable 3553(a) factors must be balanced and applied anew to the defendant's application. "What justifies compassionate release is a finding that new mitigating 'extraordinary and compelling' circumstances exist to reduce [the original] sentence; it is not an opportunity to second guess or to reconsider whether the original sentence was just." *United States v. Ebbers*, 432 F. Supp. 3d 421, 429 (SDNY, January 8, 2020). "A sentence must reflect consideration of the balance of the §3553(a) factors; unjustified reliance upon any one factor is a symptom of an unreasonable sentence." *United States v. Rattoballi*, 452 F.3d 127 (2d. Cir. 2006), (citing *United States v. Hampton*, 441 F.3d 284, 288 (4th Cir.2006). See also, *United States v. Givens*, 443 F.3d 642, 646 (8th Cir. 2006) (holding that the district court "gave too much weight" to the defendant's "history and characteristics" and "not enough to the other section 3553(a) factors; *United States v. Cage, 451 F.3d 585, 595* (10th Cir. 2006) ("finding that the Court's sentencing error was not in its consideration of 3553(a) factors, but the weight that was placed on those factors).

### Release Plan

If released to home confinement, Kesean would be living with his grandmother, Donna Depina, 62 years old, who works from home as a hair dresser. Her six-bedroom and two-bathroom private house is located at [redacted] Also residing there is his uncle, Brandon Weldon, 36 years old, who is employed as a school teacher. Neither Ms. Depina nor Mr. Weldon has any criminal record. There are no firearms in the home and there is a landline for electronic monitoring. The defendant would have his own bedroom and bathroom to safely quarantine after his release and then use for the duration of his confinement. Ms. Depina would be more than willing to "supervise" Kesean in support of any conditions imposed by the Court and in keeping Probation informed as to Kesean's compliance.

Kesean's serious and ongoing multiple underlying co-morbidities, the inability of FCI Ray Brook to protect him from Covid-19 constitute "extraordinary and compelling reasons" for granting the relief requested. 18 USC 3553(a) factors further support this application. The Court's 120-month prison sentence imposed should not turn into a potential death sentence.

Due to the foregoing, I request that the defendant be granted a sentence reduction, and that he be immediately released to home confinement with strict electronic monitoring, to be followed by three years' Supervised Release.

Thank you, Your Honor, for your consideration of this matter.

Application for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied. While Mr. Galloway may suffer from some health challenges, including asthma and obesity, these factors do not dictate the outcome. Asthma has proven not to be the risk factor that was originally feared, as it was not listed in the top 10 risk factors in New York. Moreover, while many inmates have tested positive at Ray Brook, so too have many inmates and stafff received the vaccines, which have proven highly effective. Moreover, the Section 3553(a) factors argue strongly against release. Mr. Galloway was convicted of serious felonies and has not served half of his sentence. Releasing him now would undermine respect for the law.

Very truly yours,

Tanner & Ortega, L.L.P.

Howard E. Tanner

Enc.

So Ordered.  4/19/21

cc:   AUSA Scott Hartman (By ECF and Email/PDF)

7